### UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| PRIVATE BANK & TRUST COMPANY, | ) | |
| as Independent Administrator of the Estate of | ) | |
| FREDDIE LATRICE WILSON, Deceased, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.    1:09-cv-07526 |
| | ) | |
| CITY OF CHICAGO, a Municipal | ) | Honorable Harry D. Leinenweber |
| Corporation, OFFICER JASON SANTIAGO, | ) | |
| OFFICER TOMISLAV VIDLJINEVIC, and | ) | |
| OFFICER GUADALUPE DELEON, | ) | |
| | ) | |
| Defendants. | ) | |

---

## SECOND AMENDED COMPLAINT AT LAW

NOW COMES Plaintiff, PRIVATE BANK & TRUST COMPANY, as Independent Administrator of the Estate of FREDDIE LATRICE WILSON, deceased, ("Plaintiff"), by and through its attorneys, ROMANUCCI & BLANDIN, LLC, and for Plaintiff's Second Amended Complaint at law, complaining against Defendants, CITY OF CHICAGO, a municipal corporation, OFFICER JASON SANTIAGO, OFFICER TOMISLAV VIDLJINEVIC, and OFFICER GUADALUPE DELEON, pleading hypothetically and in the alternative, states as follows:

### <u>JURY DEMAND</u>

1.     The Plaintiff hereby demands a trial by jury.

**NATURE OF ACTION**

2.     This cause of action arises out of the shooting death of Plaintiff's decedent,

FREDDIE WILSON (hereinafter referred to as "WILSON") caused by defendant officers

SANTIAGO, VIDLJINEVIC, and DELEON on November 13, 2007, at approximately 10:30

p.m., at or near 16 North Lorel Avenue, Chicago, Illinois.

3.     This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983, and

the Fourth and Fourteenth Amendments to the United States Constitution, and under the common

law of the State of Illinois, against the CITY OF CHICAGO and Chicago Police Officers

JASON SANTIAGO, TOMISLAV VIDLJINEVIC, and GUADALUPE DELEON, individually.

**JURISDICTION AND VENUE**

4.     This Court has original jurisdiction pursuant to 28 U.S. C. § 1331 over Plaintiff's

§ 1983 claim.

5.     This Court has supplemental jurisdiction over the state claims under 28 U.S.C. §

1367 because said claims are so related to Plaintiff's § 1983 claim, which is within this Court's

original jurisdiction, since they arise out of the same case or controversy, the shooting death of

WILSON, under Article III of the United States Constitution.

6.     Venue is proper herein under 28 U.S.C. § 1391(b) since the parties reside, or, at

the time the events took place, formerly resided in this judicial district, and the events giving rise

to the claims asserted herein occurred here as well.

**THE PARTIES**

7.     Defendant CITY OF CHICAGO, is a municipal corporation organized under the

laws of the State of Illinois.

8.     That at all times pertinent hereto, the Defendant, CITY OF CHICAGO, a

2

municipal corporation maintaining, as a division of said municipal corporation, a certain police department, commonly referred to as the Chicago Police Department.

9.      At all relevant times, Defendant, Chicago Police Officer JASON SANTIAGO ("SANTIAGO"), Beat 1524, was acting under color of law and in the course of his employment.

10.     At all relevant times, Defendant, Chicago Police Officer TOMISLAV VIDLJINEVIC ("VIDLJINEVIC"), Beat 1524, was acting under color of law and in the course of his employment.

11.     At all relevant times, Defendant, Chicago Police Officer GUADALUPE DELEON ("DELEON"), Beat 1512, was acting under color of law and in the course of his employment.

12.     At all relevant times, Chicago Police Officer CELAL SURGIT ("SURGIT"), Beat 1512, was acting under color of law and in the course of his employment.

13.     At the time of his death on November 13, 2007, decedent FREDDIE LATRICE WILSON ("WILSON") was a citizen of the United States and a resident of Cook County, Illinois.

14.     On December 28, 2007, Plaintiff, PRIVATE BANK & TRUST COMPANY, was appointed as the Independent Administrator for the Estate of Freddie Latrice Wilson by the Probate Division of the Circuit Court of Cook County, No. 07 P 8169.

## FACTS

15.     On November 13, 2007, WILSON was operating a motor vehicle, a 1999 gray Cadillac, westbound on Madison at or near 5400 Madison and North Lorel Avenue in Chicago, Illinois.

16.     On said date and at approximately 10:28 p.m., Defendant officers SANTIAGO and VIDLJINEVIC, initiated a traffic stop for the Cadillac WILSON was operating due to a non-working headlight on the driver's side of the vehicle.

17.     That on said date and at said time, WILSON curbed the Cadillac he was operating at or near 16 North Lorel Avenue, Chicago, Illinois.

18.     That shortly after WILSON stopped the Cadillac he was operating, SANTIAGO and VIDLJINEVIC exited their Chicago Police Department Vehicle and approached WILSON who was seated in the driver's seat of the Cadillac.

19.     That shortly thereafter, Defendant, DELEON, and SURGIT arrived at the scene and exited their Chicago Police Department Vehicle.

20.     That shortly thereafter, according to Chicago Police Department Records and statements given by the involved police officers, VIDLJINEVIC requested that WILSON produce his driver's license and proof of insurance for the Cadillac.

21.     That shortly thereafter, according to Chicago Police Department Records and statements given by the involved police officers, WILSON produced proof of insurance for the Cadillac but did not produce a driver's license.

22.     That at some point during the traffic stop, according to Sprint Cell Phone Records, WILSON utilized his personal cell phone to make a phone call.

23.     That during the traffic stop, SANTIAGO and VIDLJINEVIC were standing on the driver's side of the Cadillac where WILSON was seated, DELEON was standing near the rear passenger side window and SURGIT was stationed near the trunk of the Cadillac.

24.     That thereafter and without lawful cause, need, or explanation, SANTIAGO, VIDLJINEVIC and/or DELEON, made a "gun call"[1] and yelled gun.[2]

25.     That at approximately 10:31 p.m., SANTIAGO, VIDLJINEVIC, and DELEON, without lawful cause, need, or explanation, pulled out their service pistols and opened fire on WILSON and the Cadillac he was seated in.

26.     That Defendant officers SANTIAGO, VIDLJINEVIC, and DELEON used inappropriate, unwarranted, and unjustifiable force against WILSON when the defendant officers fired twenty-four (24) shots at WILSON at close range, striking WILSON's body approximately eighteen (18) times.

27.     That after WILSON had been shot eighteen (18) times, including a through and through shot to his right bicep, according to his own admission, SANTIAGO used his flashlight to move the gun, a critical piece of evidence, out of WILSON's right hand.[3]

28.     That after WILSON had been shot eighteen (18) times, WILSON was handcuffed by DELEON, SANTIAGO and/or VIDLJINEVIC.[4]

29.     That at all relevant times hereto, WILSON, was unarmed and posed no threat of harm to the officers or the public.

30.     That at all relevant times hereto, alternative methods of force were and always available to DELEON, SANTIAGO and/or VIDLJINEVIC prior to WILSONS' shooting.

31.     That prior to opening fire and shooting WILSON multiple times at close range and at all times relevant hereto, according to his own admission, SANTIAGO, had a working taser on his duty belt.

---

[1] A gun call is when an officer or individual yells out "gun" indicating that the perpetrator is armed with a gun.
[2] See Jason Santiago, Deposition Testimony, page 116.
[3] See Jason Santiago, Deposition Testimony, page 94-96.

32.     That prior to opening fire and shooting WILSON multiple times at close range and at all times relevant hereto, according to his own admission, SANTIAGO, had OC Spray on his duty belt.

33.     That prior to opening fire and shooting WILSON multiple times at close range and at all times relevant hereto, according to his own admission, VIDLJINEVIC, had OC Spray on his duty belt.

34.     That prior to opening fire and shooting WILSON multiple times at close range and at all times relevant hereto, according to his own admission, DELEON, had OC Spray on his duty belt.

35.     That after the shooting, a gun was found on the scene that, according to Defendant Officers, SANTIAGO, VIDLJINEVIC, DELEON and SURGIT, which was allegedly in WILSON's right hand before, during and after the shooting.

36.     That after the shooting death of WILSON, numerous officers and detectives with the CITY OF CHICAGO police department responded to the crime scene where they documented evidence, took photographs as well as video footage of the crime scene.

37.     That at the direction of the responding Detectives[5] from the CITY OF CHICAGO police department, there were limited overall photographs taken of the crime scene.

38.     That at the direction of the responding Detectives[6] from the CITY OF CHICAGO police department, there were no photographs of WILSON's right hand taken at the crime scene.

---

[4] See Jason Santiago, Deposition Testimony, page 94-96.
[5] City of Chicago employees, Frank A. Szwedo, Demosthen Balodimas, and Thomas Kolman were all assigned as Detectives to the crime scene according to IPRA documents. (IPRA 035).
[6] City of Chicago employees, Frank A. Szwedo, Demosthen Balodimas, and Thomas Kolman were all assigned as Detectives to the crime scene according to IPRA documents. (IPRA 035).

39.     That at the direction of the responding Detectives[7] from the CITY OF CHICAGO police department, a black rectangular object present in the driver's seat of the Cadillac was not collected as evidence even though it was in the exact location where the involved officers stated that WILSON reached behind his back prior to the shooting.

40.     That at the direction of the responding Detectives[8] from the CITY OF CHICAGO police department, a rectangular black object present in the driver's seat of the Cadillac was not marked as evidence even though it was in the exact location where the involved officers stated that WILSON reached behind his back prior to the shooting.

41.     That after the shooting death of WILSON, the City of Chicago Independent Police Review Authority, commonly referred to as "IPRA[9]," also began an investigation into the police involved shooting which resulted in the death of WILSON.

42.     That on November 13, 2009, Plaintiff filed his Complaint at Law pursuant to 42 U.S.C. § 1983 and Illinois common law for the shooting death of WILSON.

43.     That during the course of written and oral discovery, it was discovered that WILSON's car keys, cell phone and remote for the Cadillac he was operating on the night of his death, were found *outside* of the Cadillac  all covered in WILSON's blood which was confirmed via forensic testing performed by Orchid Cellmark Laboratories.[10]

---

[7] City of Chicago employees, Frank A. Szwedo, Demosthen Balodimas, and Thomas Kolman were all assigned as Detectives to the crime scene according to IPRA documents. (IPRA 035).
[8] City of Chicago employees, Frank A. Szwedo, Demosthen Balodimas, and Thomas Kolman were all assigned as Detectives to the crime scene according to IPRA documents. (IPRA 035).
[9] According to its website, "[t]he Independent Police Review Authority (IPRA) intakes all allegations of misconduct, whether generated externally by the public, or internally by Police Department personnel. When an allegation involves excessive force, domestic violence, coercion though violence, or verbal bias-based abuse, IPRA conducts the investigation into the allegation and recommends the result." *See* http://www.iprachicago.org/ (last visited on August 3, 2012).
[10] See Cellmark Laboratory Report.

44.     That during the course of written and oral discovery and forensic testing, it was discovered that the gun allegedly held by WILSON in his right hand before, during and after the shooting, did not contain a single fingerprint belonging to WILSON.[11]

45.     That during the course of written and oral discovery and forensic testing, it was discovered that the gun allegedly held by WILSON did not contain any of WILSON's blood on it.[12]

46.     That during the course of written and oral discovery and forensic testing, it was discovered that the gun allegedly held by WILSON did not contain any of WILSON's DNA on it.[13]

47.     That during the course of written and oral discovery, it was discovered that none of the officers involved in the shooting of WILSON could explain how WILSON's car keys ended up outside of the Cadillac after the shooting.[14]

48.     That during the course of written and oral discovery, it was discovered that none of the officers involved in the shooting of WILSON could explain how WILSON's cell phone ended up outside of the Cadillac after the shooting.[15]

49.     That during the course of written and oral discovery, it was discovered that none of the officers involved in the shooting of WILSON could explain how WILSON's remote ended up outside of the Cadillac after the shooting.[16]

50.     Approximately three and a half years after WILSON's death, the black rectangular object that was present in the driver's seat of the Cadillac (which, as mentioned

---

[11] See Cellmark Laboratory Report.
[12] See Cellmark Laboratory Report.
[13] See Cellmark Laboratory Report.
[14] See Jason Santiago, Deposition Testimony, page 18.
[15] See Jason Santiago, Deposition Testimony, page 18.

above, was not collected or marked as evidence on the night of the shooting) was identified by an attorney for the CITY OF CHICAGO and is now marked as evidence and identified to be a black leather cell phone case.

51.     That after the shooting death of WILSON, IPRA took recorded statements from, VIDLJINEVIC, DELEON and SURGIT but never took a recorded statement from SANTIAGO.[16]

52.     There were at least three Civilian witnesses to the shooting of WILSON which were questioned by IPRA.

53.     All three witnesses, Grace Hazzard, Patricia Harris and William "Bill" Harris, testified that WILSON was not holding a gun before, during or after the shooting.

54.     That the gun allegedly carried by WILSON on the night of his shooting was registered to a woman by the name of Cassandra Russell from Indianapolis and was reported stolen in May of 2006.

55.     On January 25th, 2012, four (4) years and nearly three (3) months after the shooting, Sergeant Prah testified that he had knowledge and information regarding the shooting of WILSON and that he arrived on the scene of the shooting within seconds but that he never produced a report, gave a recorded statement, or told anyone in City of Chicago Police Department of his personal information about the shooting until he was interviewed by an attorney representing the CITY OF CHICAGO and involved police officers prior to his deposition, with regards to the investigation into WILSON's death.[18]

---

[16] See Jason Santiago, Deposition Testimony, page 18.
[17] IPRA did however take a summary statement from SANTIAGO over the phone nearly one year after the shooting.
[18] See James Prah, Deposition Testimony, page 43-44.

## COUNT I – 42 U.S.C. §1983
**(Excessive Force)**

1-55.    Plaintiff hereby adopts and re-alleges paragraphs 1 through 55 as and for paragraphs 1 through 55 of Count I as though fully set forth herein.

56.    The aforementioned conduct of Defendant officers, SANTIAGO, VIDLJINEVIC, and DELEON, constituted excessive force in violation of the United States Constitution.

57.    The actions of the defendant officers were objectively unreasonable and were undertaken intentionally with willful indifference to WILSON's constitutional rights.

58.    The actions of the Defendant officers, SANTIAGO, VIDLJINEVIC, and DELEON, were undertaken with malice, willfulness, and reckless indifference to the rights of others.

59.    At the time of his death, FREDDIE LATRICE WILSON, deceased, left surviving him minor children, including but not limited to, Latee Wilson, a minor, his son, King Latee Osei'el Wilson, a minor, his son, Leila Wilson, a minor, his daughter, Kalah Wilson, a minor, his daughter, and Kendra Wilson, a minor, his daughter, who were dependent upon the decedent for their support and have been and will be deprived of benefits of the decedent's services, income, support, society, companionship, love and affection during and for the remainder of their lives.

60.    As a result of defendant officers' unjustified and excessive use of force, decedent WILSON's minor children have been and will be deprived of benefits of the decedent's services, income, support, society, companionship, love and affection during and for the remainder of their lives.

WHEREFORE, Plaintiff, PRIVATE TRUST & BANK COMPANY, as Independent Administrator of the Estate of FREDDIE LATRICE WILSON, deceased, respectfully requests that this Court enter judgment against defendants, CITY OF CHICAGO, a Municipal Corporation, and Chicago Police Officers JASON SANTIAGO, TOMISLAV VIDLJINEVIC, and GUADALUPE DELEON, awarding compensatory damages, including medical and funeral expenses, and punitive damages against defendant officers SANTIAGO, VIDLJINEVIC, DELEON, in their individual capacities, for Plaintiff's attorney's fees and costs, any further relief this Court deems just.

## Count II – 42 U.S.C. §1983
### (Conspiracy)

1-60.   Plaintiff hereby adopts and re-alleges paragraphs 1 through 60 as and for paragraphs 1 through 60 of Count II as though fully set forth herein.

61.   Section 1983 makes it unlawful for any person "under color of any statute ordinance, regulation, custom, or usage, of any State . . . [to] subject, or cause to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983.

62.   To state a section 1983 civil conspiracy claim, one must allege "(1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *See Scherer v. Balkema*, 840 F.2d 437, 441-42 (7th Cir. 1988). "A complaint pleads sufficient facts from which a § 1983 conspiracy can be inferred where a conspiratorial agreement is plead generally, and facts documenting overt acts in furtherance of the conspiracy are plead

specifically." *Tribblet v. Sanchez*, No. 95 C 6816, 1996 WL 496603, at 4 (N.D. Ill. Aug. 29, 1996); *see Quinones v. Szorc*, 771 F.2d 289, 291 (7th Cir. 1985).

63.     Defendant officers, SANTIAGO, VIDLJINEVIC, DELEON and OFFICER SURGIT, individually and as officers, agents and/or employees of defendant CITY OF CHICAGO had an express or implied agreement among themselves to deprive WILSON of his constitutional rights by stating that WILSON was armed with a gun the night of the shooting.

64.     Defendant officers, SANTIAGO, VIDLJINEVIC, DELEON and OFFICER SURGIT,  individually and as officers, agents and/or employees of defendant CITY OF CHICAGO actually deprived   WILSON of those rights in the form of overt acts in furtherance of the agreement.

65.     Defendant officers, SANTIAGO, VIDLJINEVIC, DELEON and OFFICER SURGIT,  individually and as officers, agents and/or employees of defendant CITY OF CHICAGO committed overt acts in furtherance of the agreement when:

   a.   With the express or implied agreement among themselves to deprive WILSON of his constitutional rights, Officers SANTIAGO, VIDLJINEVIC and DELEON shot WILSON eighteen (18) times;

   b.   With the express or implied agreement among themselves to deprive WILSON of his constitutional rights, Officers SANTIAGO, VIDLJINEVIC, DELEON and SURGIT placed a gun outside his driver's side door, which did not have WILSON's fingerprints, DNA or blood despite their claims that the gun was firmly gripped in WILSON's right hand with his right index finger on the trigger and that WILSON continued to grip the gun before, during and after the shooting; and

   c.   With the express or implied agreement among themselves to deprive WILSON of his constitutional rights, Officers SANTIAGO, VIDLJINEVIC, DELEON and SURGIT, alleged that the gun found outside the Cadillac driver's door belonged to WILSON when in fact Defendants planted the gun to support their defense for shooting WILSON and to avoid punishment for the shooting.

WHEREFORE, Plaintiff, PRIVATE TRUST & BANK COMPANY, as Independent Administrator of the Estate of FREDDIE LATRICE WILSON, deceased, respectfully requests that this Court enter judgment against defendants, CITY OF CHICAGO, a Municipal Corporation, and Chicago Police Officers JASON SANTIAGO, TOMISLAV VIDLJINEVIC, and GUADALUPE DELEON, awarding compensatory damages, including medical and funeral expenses, and punitive damages against defendant officers SANTIAGO, VIDLJINEVIC, DELEON, in their individual capacities, for Plaintiff's attorney's fees and costs, any further relief this Court deems just.

## COUNT III – Wrongful Death
### (Battery)

1-65.    Plaintiff hereby adopts and re-alleges paragraphs 1 through 65 as and for paragraphs 1 through 65 of Count III as though fully set forth herein.

66.    At all relevant times, Defendant officers, SANTIAGO, VIDLJINEVIC, and DELEON, were authorized officers, agents, and employees of the Chicago Police Department and CITY OF CHICAGO and were acting in the course of their employment.

67.    That the actions of Defendant officers, SANTIAGO, VIDLJINEVIC, and DELEON, constituted offensive physical conduct made without the consent of decedent, WILSON.

68.    That the Defendant officers, SANTIAGO, VIDLJINEVIC, and DELEON, actions were undertaken intentionally, willfully and wantonly.

69.    As a direct and proximate result of the shots fired by officers, SANTIAGO,

VIDLJINEVIC, and DELEON, individually and as officers, agents and/or employees of defendant CITY OF CHICAGO, the plaintiff's decedent, WILSON, sustained substantial injuries and ultimately expired.

70. At the time of his death, FREDDIE LATRICE WILSON, deceased, left surviving him minor children, including but not limited to, Latee Wilson, a minor, his son, King Latee Osei'el Wilson, a minor, his son, Leila Wilson, a minor, his daughter, Kalah Wilson, a minor, his daughter, and Kendra Wilson, a minor, his daughter, who were dependent upon the decedent for their support and have been and will be deprived of benefits of the decedent's services, income, support, society, companionship, love and affection during and for the remainder of their lives.

WHEREFORE, Plaintiff, PRIVATE TRUST & BANK COMPANY, as Independent Administrator of the Estate of FREDDIE LATRICE WILSON, deceased, respectfully requests that this Court enter judgment against defendants, CITY OF CHICAGO, a Municipal Corporation, and Chicago Police Officers JASON SANTIAGO, TOMISLAV VIDLJINEVIC, and GUADALUPE DELEON, awarding compensatory damages, including medical and funeral expenses, and punitive damages against defendant officers SANTIAGO, VIDLJINEVIC, DELEON, in their individual capacities, for Plaintiff's attorney's fees and costs, any further relief this Court deems just.

## COUNT IV – Wrongful Death
### (Willful and Wanton)

1-71. Plaintiff hereby adopts and re-alleges paragraphs 1 through 71 as and for paragraphs 1 through 71 of Count IV as though fully set forth herein.

72.     At all relevant times, defendant CITY OF CHICAGO, acting by and through its duly authorized officers, agents, representatives and/or employees, including but not limited to officers JASON SANTIAGO, TOMISLAV VIDLJINEVIC, and GUADALUPE DELEON, owed a duty of care to plaintiff to refrain from willful and wanton conduct which would endanger the safety of others, including decedent WILSON.

73.     At all times relevant times, it was the duty of Defendant, SANTIAGO, individually and as an officer, agent and/or employee of the CITY OF CHICAGO, to refrain from willful and wanton conduct which would endanger the safety of others, including decedent WILSON.

74.     At all times relevant times, it was the duty of defendant VIDLJINEVIC, individually and as an officer, agent and/or employee of the CITY OF CHICAGO, to refrain from willful and wanton conduct which would endanger the safety of others, including decedent WILSON.

75.     At all times relevant times, it was the duty of defendant DELEON, individually and as an officer, agent and/or employee of the CITY OF CHICAGO, to refrain from willful and wanton conduct which would endanger the safety of others, including decedent WILSON.

76.     Defendants SANTIAGO, VIDLJINEVIC, and DELEON, individually and as officers, agents and/or employees of defendant CITY OF CHICAGO, breached the aforementioned duty by committing one or more of the following willful and wanton actions:

> a.  With utter indifference and conscious disregard, Officers SANTIAGO, VIDLJINEVIC, and DELEON pointed their weapons at decedent WILSON under circumstances where the decedent posed no threat or danger either to the Officers or the public;
>
> b.  With utter indifference and conscious disregard, Officers SANTIAGO, VIDLJINEVIC, and DELEON placed their finger on the trigger of their

service weapons while pointing their weapons at decedent WILSON under circumstances where the decedent posed no threat or danger either to the Officers or the public;

c. With utter indifference and conscious disregard, Officers SANTIAGO, VIDLJINEVIC, and DELEON used deadly force against decedent WILSON under circumstances where the decedent posed no threat or danger to the Officers or the public;

d. With utter indifference and conscious disregard, Officers SANTIAGO, VIDLJINEVIC, and DELEON shot decedent WILSON, who was unarmed and posing no threat or danger to the Officers or the public; and,

e. With utter indifference and conscious disregard, Officers SANTIAGO, VIDLJINEVIC, and DELEON, used deadly force against decedent WILSON under circumstances where the decedent was subdued.

77.     As a direct and proximate result of the shots fired by officers, SANTIAGO, VIDLJINEVIC, and DELEON, individually and as officers, agents and/or employees of defendant CITY OF CHICAGO, the plaintiff's decedent, WILSON, sustained substantial injuries and ultimately expired.

78.     At the time of his death, FREDDIE LATRICE WILSON, deceased, left surviving him minor children, including but not limited to, Latee Wilson, a minor, his son, King Latee Osei'el Wilson, a minor, his son, Leila Wilson, a minor, his daughter, Kalah Wilson, a minor, his daughter, and Kendra Wilson, a minor, his daughter, who were dependent upon the decedent for their support and have been and will be deprived of benefits of the decedent's services, income, support, society, companionship, love and affection during and for the remainder of their lives.

WHEREFORE, Plaintiff, PRIVATE TRUST & BANK COMPANY, as Independent Administrator of the Estate of FREDDIE LATRICE WILSON, deceased, respectfully requests that this Court enter judgment against defendants, CITY OF CHICAGO, a Municipal

Corporation, and Chicago Police Officers JASON SANTIAGO, TOMISLAV VIDLJINEVIC, and GUADALUPE DELEON, awarding compensatory damages, including medical and funeral expenses, and punitive damages against defendant officers SANTIAGO, VIDLJINEVIC, DELEON, in their individual capacities, for Plaintiff's attorney's fees and costs, any further relief this Court deems just.

## COUNT V – Respondeat Superior

1-78.    Plaintiff hereby adopts and re-alleges paragraphs 1 through 78 as and for paragraphs 1 through 78 of Count V as though fully set forth herein.

79.    In committing the acts alleged in the preceding paragraphs, the Defendant Chicago Police Officers SANTIAGO, VIDLJINEVIC, and DELEON, were members of, and acting as agents of, the Chicago Police Department, acting at all relevant times within the scope of their employment.

80.    Defendant CITY OF CHICAGO is liable as principal for all torts committed by its agents including Chicago Police Officers SANTIAGO, VIDLJINEVIC, GUADALUPE and DELEON.

WHEREFORE, Plaintiff, PRIVATE TRUST & BANK COMPANY, as Independent Administrator of the Estate of FREDDIE LATRICE WILSON, deceased, respectfully requests that this Court enter judgment against defendants, CITY OF CHICAGO, a Municipal Corporation, and Chicago Police Officers JASON SANTIAGO, TOMISLAV VIDLJINEVIC, and GUADALUPE DELEON, awarding compensatory damages, including medical and funeral expenses, and punitive damages against defendant officers SANTIAGO, VIDLJINEVIC, DELEON, in their individual capacities, for Plaintiff's attorney's fees and costs, any further relief this Court deems just.

## <u>COUNT VI – Punitive Damages</u>

1-80.    Plaintiff hereby adopts and re-alleges paragraphs 1 through 80 as and for paragraphs 1 through 80 of Count VI as though fully set forth herein.

81.    42 U.S.C. § 1983 provides that punitive damages are available under section 1983 when the defendant's conduct was reckless or callously indifferent to the federally protected rights of others, or if the defendant was motivated by an evil intent.

82.    Defendants SANTIAGO, VIDLJINEVIC, DELEON and SURGIT, individually and as officers, agents and/or employees of defendant CITY OF CHICAGO were reckless and/or callously indifferent to the federally protected rights of WILSON.

83.    Defendants SANTIAGO, VIDLJINEVIC, DELEON and SURGIT,  individually and as officers, agents and/or employees of defendant CITY OF CHICAGO were reckless and callously indifferent to the federally protected rights of WILSON when they:

      a.  With recklessness and callous indifference to the federally protected rights of WILSON, Officers SANTIAGO, VIDLJINEVIC, and DELEON pointed their weapons at decedent WILSON under circumstances where the decedent posed no threat or danger either to the Officers or the public;

      b.  With recklessness and callous indifference to the federally protected rights of WILSON, Officers SANTIAGO, VIDLJINEVIC, and DELEON placed their finger on the trigger of their service weapons while pointing their weapons at decedent WILSON under circumstances where the decedent posed no threat or danger either to the Officers or the public;

      c.  With recklessness and callous indifference to the federally protected rights of WILSON, Officers SANTIAGO, VIDLJINEVIC, and DELEON used deadly force against decedent WILSON under circumstances where the decedent posed no threat or danger to the Officers or the public;

      d.  With recklessness and callous indifference to the federally protected rights of WILSON, Officers SANTIAGO, VIDLJINEVIC, and DELEON shot decedent WILSON, who was unarmed and posing no threat or danger to the Officers or the public;

    e.   With recklessness and callous indifference to the federally protected rights of WILSON, Officers SANTIAGO, VIDLJINEVIC, and DELEON, used deadly force against decedent WILSON under circumstances where the decedent was subdued; and,

    f.   With recklessness and callous indifference to the federally protected rights of WILSON, Officers SANTIAGO, VIDLJINEVIC, DELEON, and SURGIT planted a gun found outside the driver's side door of WILSON's car.

WHEREFORE, Plaintiff, PRIVATE TRUST & BANK COMPANY, as Independent Administrator of the Estate of FREDDIE LATRICE WILSON, deceased, respectfully requests that this Court enter judgment against defendants, CITY OF CHICAGO, a Municipal Corporation, and Chicago Police Officers JASON SANTIAGO, TOMISLAV VIDLJINEVIC, and GUADALUPE DELEON, awarding compensatory damages, including medical and funeral expenses, and punitive damages against defendant officers SANTIAGO, VIDLJINEVIC, DELEON, in their individual capacities, for Plaintiff's attorney's fees and costs, any further relief this Court deems just.

### COUNT VII - Indemnification

1-83.   Plaintiff hereby adopts and re-alleges paragraphs 1 through 83 as and for paragraphs 1 through 83 of Count VII as though fully set forth herein.

84.   Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

85.   The defendant officers SANTIAGO, VIDLJINEVIC, and DELEON, are or were employees of the Chicago Police Department who acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE, Plaintiff, PRIVATE TRUST & BANK COMPANY, as Independent Administrator of the Estate of FREDDIE LATRICE WILSON, deceased, respectfully requests that this Court enter judgment against defendants, CITY OF CHICAGO, a Municipal Corporation, and Chicago Police Officers JASON SANTIAGO, TOMISLAV VIDLJINEVIC, and GUADALUPE DELEON, awarding compensatory damages, including medical and funeral expenses, and punitive damages against defendant officers SANTIAGO, VIDLJINEVIC, DELEON, in their individual capacities, for Plaintiff's attorney's fees and costs, any further relief this Court deems just.

Respectfully Submitted,
ROMANUCCI & BLANDIN, LLC

 /s/ Rebekah L. Williams 
Attorney for Plaintiff

Antonio M. Romanucci
Stephan D. Blandin
Rebekah L. Williams
**ROMANUCCI & BLANDIN, LLC**
33 North LaSalle Street
20th Floor
Chicago, Illinois 60602
(312) 458-1000
(312) 458-1004 *facsimile*
ARDC No.: 6190290 (Romanucci)
ARDC No.: 6194028 (Blandin)
ARDC No.: 6307331 (Williams)

**<u>Certificate of Service</u>**

       I certify that on the 27th day of August, 2012, a copy of "**Plaintiff's Second Amended Complaint at Law**" was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/  Rebekah L. Williams  
Rebekah L. Williams
